**Robert WILLIAMS, et al., Plaintiffs,**

v.

**Mike JOHANNS, et al., Defendants.**

**Civil Action No. 03–2245 (CKK/JMF).**

United States District Court,
District of Columbia.

July 26, 2007.

James W. Myart, Jr., San Antonio, TX, for Plaintiffs.

Paul A. Dean, U.S. Department Of Justice Federal Programs Branch, Washington, DC, for Defendants.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

This case was referred to me for all discovery disputes. Plaintiffs have recently filed several motions for consideration, including (1) *Plaintiffs' Motion for Reconsideration of Imposition of Sanctions Against Plaintiffs and Counsel for Failure to Respond to Discovery;* (2) *Plaintiffs' Amended Motion for Reconsideration of Imposition of Sanctions Against Plaintiffs and Counsel for Failure to Respond to Discovery* ("Pls.Amend.Recon."); (3) *Plaintiffs' Motion for Leave to File Witness List and Respectful Request for Expedited Ruling* ("Pls.Mot.Wit."); and (4) *Plaintiffs' Amended Motion for Leave to File Witness List and Respectful Request for Expedited Ruling* ("Pls.Amend.Wit."). For the reasons stated below, the requests for expedited rulings will be granted; the initial motion for reconsideration of sanctions will be denied as moot in light of the amended motion for reconsideration of the same, and the amended motion for reconsideration and the requests to file witness lists will be denied. The Court will also order the Clerk to send a copy of this Memorandum Opinion and accompanying Order directly to Plaintiffs Laverne and Robert Williams to ensure they understand that the sanctions imposed are due entirely to the conduct of their counsel and do not result from any judgment on the merits of their case.

## I. BACKGROUND

The motions before me are the culmination of a unique and incredible discovery process. To understand them, and what happened during discovery, one has to put them in the context of this case's history. I have provided that history in an Appendix to this opinion. *See Appendix* ("App."). That history establishes that:

1. Plaintiffs' counsel is unaware of the most fundamental principles of the Federal Rules of Civil Procedure pertaining to (1) the timeliness of an answer to a complaint while a motion to dismiss is pending; (2) the response time for discovery requests; and (3) counsel's obligation to certify discovery responses. App. ¶¶ 4–5, 12, 15, 25, 29–30, 52, 54.

2. Plaintiffs' counsel failed to provide reasons to support his motions for additional time to perform certain acts after having been ordered to do so by the court. He also failed to provide proper case citations, references to the federal rules on which he relied, and relevant legal standards. App. ¶¶ 2, 5, 9, 14, 55.

3. Plaintiffs' counsel violated the confidentiality of settlement discussions. App. ¶ 24.

4. Plaintiffs' counsel failed to follow court directives to refile pleadings that had been filed incorrectly and correctly filed the pleadings only after the deadline for filing had elapsed. App. ¶¶ 32–33.

5. Plaintiffs' counsel failed to cooperate with opposing counsel in scheduling times and locations for depositions and independent medical examinations. Plaintiffs' counsel's repeated failure to respond to opposing counsel's inquiries for scheduling such times and locations resulted in unnecessary delays and motions to quash and required intervention by this Court. App. ¶¶ 27–29, 31, 33–34, 43.

6. Plaintiffs' counsel failed, on multiple occasions, to respond to Defendants' discovery according to federal and local rules, then, on at least two

separate occasions, by court-imposed deadlines, as well as at least two self-imposed deadlines. Plaintiffs' counsel likewise repeatedly failed to move to extend the time within which he had to respond prior to the passing of the relevant deadlines. App. ¶¶ 15, 20, 26, 29–30, 36, 38, 40, 43, 49, 54.

7.  Plaintiffs' counsel failed to comply with a court order to consult with government counsel to submit a joint discovery plan before a date specified by the Court. App. ¶¶ 38–39.

8.  Plaintiff's counsel failed to prepare to propound discovery of any kind whatsoever on the Defendants until at least March of 2007.[1] App. ¶¶ 49–50.

9.  Plaintiffs' counsel failed to pursue depositions of certain high-level officials according to proper procedure and regulations, and he tried to circumvent the process by which such depositions are taken. App. ¶¶ 54, 56–57.

Nonetheless, Plaintiffs' counsel has asked the Court to reconsider sanctions imposed for repeatedly and blatantly violating court orders, even as he continued to violate the very court orders he wants reconsidered. The Court will entertain none of it.

## II. ANALYSIS

### A. The Amended Motion for Reconsideration

Plaintiffs' Amended Motion for Reconsideration of Imposition of Sanctions Against Plaintiffs and Counsel for Failure to Respond to Discovery asks the Court to strike the sanctions imposed by the Court's order of December 28, 2006. Pls. Amend. Recon. at 5. As explained in the Appendix at Paragraph 38 and in the order itself, the Court sanctioned Plaintiffs' counsel because Plaintiffs' supplemental answers to interrogatories "remain[ed] utterly deficient and, more egregiously, directly violate[d] the orders of the Court." *Williams v. Johanns*, Civ. No. 03–2245, 2006 WL 3826967 at *3 (D.D.C. Dec. 28, 2006). In addition to failing to provide adequate supplemental answers and production of documents as ordered by invoking (a) the useless answer "will supplement" to certain interrogatories, (b) a mistaken and equally useless reference to the Code of Federal Regulations, and (c) meaningless references to an unspecified "file," Plaintiffs' counsel blatantly "supplemented" many answers to interrogatories with the very responses that the Court found insufficient in its first order compelling discovery. *See id.* at *3–*5.

In support of the motion to reconsider, Plaintiffs' counsel points to the telephone conference of February 7, 2007, in which Mrs. Williams apologized to the Court for the delay in the case due to her illnesses. Pls. Amend. Recon. at 1. Relying on his recollection of the phone call to the Court, Plaintiffs' counsel portrays Mrs. Williams as praising him for "trying to get this case moving" and saying that "I have just been unable to participate because of my illness." *Id.* at 1–2.

First, Mrs. Williams actually said the following:

> I'd just like to apologize to the Court for—because it seems that the reason things are not moving as swiftly as they did is because of me, and I'd like to apologize to the Court but, you know, I have—I am a sick lady.... And [Plain-

---

1.  Following the lift of the Court's stay on discovery on April 24, 2007, Plaintiffs actually propounded discovery on Defendants on May 1, 2007.

tiffs' counsel] has tried to, I mean, that's the reason I went to my doctor is because he told me that we need to move this thing as quickly as possible, but I have just not been able.

Transcript of Telephone Status Conference, 2/7/07, at 12–13.

■ Second, Mrs. Williams owes this Court no apology, nor is the "reason things are not moving as swiftly" due to Mrs. Williams. Her illness did not cause her counsel to abandon his obligations or his ability to proceed in some significant fashion with this case, information about which he must have had at the time the Complaint was filed. The responsibility falls on Mrs. Williams's attorney, not Mrs. Williams, to communicate with the Court and opposing counsel **within the designated time frame** regarding any necessary extensions of time required to accommodate her illness. *See* Fed.R.Civ.P. 6. It is Mrs. Williams's attorney, not Mrs. Williams, who failed to make these efforts before deadlines expired on multiple occasions.

Third, Plaintiffs' counsel was sanctioned for violating a court order by repeating the very answers that the Court had found deficient in its prior order. *See Williams,* Civ. No. 03–2245, 2006 WL 3826967 at *5–*7; *Williams v. Johanns,* 235 F.R.D. 116, 122–24 (D.D.C.2006). Doing that, and repeating meaningless references to a section of the Code of Federal Regulations and a "file," and stating "will supplement" and pretending that it was an answer, were counsel's failings alone and had nothing to do with Mrs. Williams or her illness. *See Williams,* Civ. No. 03–2245, 2006 WL 3826967 at *2. Plaintiffs' counsel's relying on that poor woman's illness to excuse his deficiencies is graceless and inexcusable.

Fourth, nothing presented to the Court suggests Mrs. Williams was completely incapacitated and incapable of talking to her attorney about her case. Testimony from her physician and statements from her psychologist only indicated that it was difficult for Mrs. Williams to travel. *See* App. ¶ 46. Despite Plaintiffs' counsel's repeated mischaracterizations and assertions to the contrary, there is nothing in her doctor's testimony or elsewhere on this record to indicate that Mrs. Williams was so ill that she could not talk and could not provide her counsel with the fundamental information he needed to respond to discovery propounded by Defendants. Plaintiffs' counsel should have had, at the time of filing the Complaint, adequate information to pursue responding to and propounding discovery in this case, or, if not, to seek whatever extensions of time his client's illness caused in responding to that discovery **prior** to the deadline for doing so. The responsibility fell on Plaintiffs' counsel and Plaintiffs' counsel alone to pursue resolution of Mr. and Mrs. Williams's claims in compliance with court orders, the federal rules, and our local rules. He repeatedly failed to do so. Therefore, his request to reconsider the sanctions imposed as a result of his actions is denied.

### B. The Motions for Leave to File Witness Lists

Plaintiffs also seek to file a witness list, an amended witness list, and request an expedited ruling. Pls. Amend. Wit. at 1; Pls. Mot. Wit. at 1. As described in detail above and in prior opinions, Plaintiffs failed to adequately respond to Defendants' interrogatory regarding potential lay and expert witnesses—and at least twice the failure was in direct violation of court orders. On April 27, 2006, when discovery responses were already two months overdue, the Court ordered Plaintiffs to supplement their response of "will supplement" to the interrogatory on wit-

nesses within ten days. *Williams*, 235 F.R.D. at 125. They did not do so. Instead, Plaintiffs provided Defendants with the precise response the Court held insufficient in its previous order. Despite the violation, the Court provided another opportunity for Plaintiffs to comply without penalty when, on December 28, 2006, the Court ordered Plaintiffs to "provide a list of all potential lay and expert witnesses known at this point in the case **within ten days of this memorandum opinion or forego the introduction of witnesses at trial.**" *Williams*, Civ. No. 03–2245, 2006 WL 3826967 at *6 (emphasis added). Plaintiffs again failed to do so. The result, as clearly stated in the Court's order, is the foregoing of the introduction of witnesses at trial. Without any explanation in their motion for leave to file witness lists for the failure to comply, and without even an acknowledgment of the Court's prior orders, Plaintiffs' counsel now seeks to introduce witnesses anyway.

Moreover, despite Plaintiffs' failure to provide any names of potential witnesses to Defendants in defiance of this Court's orders, Plaintiffs incredulously now argue the Defendants had "actual notice" of at least some of these witnesses due to the record in this case. Pls. Amed. Wit. at 6; Pls. Mot. Wit. at 4. If Defendants had "actual notice" of certain potential witnesses due to responses to interrogatories provided by Plaintiffs, then surely Plaintiffs themselves were aware of the potential witnesses and had the obligation to provide that information to Defendants prior to the deadline for responding to interrogatories-and again in accordance with court orders. That Defendants *might* suspect that certain people *might* be Plaintiffs' witnesses does not excuse Plaintiffs' direct violation of the orders of the Court to provide those names to the Defendants, first within ten days of the Court's April

27, 2006 Order, and then within ten days of the Court's December 28, 2006 Order.

■ Plaintiffs appear to rely on language in the joint proposed scheduling order that, "[i]f the Court nonetheless allows Plaintiffs to introduce the testimony of any additional expert or lay witness at trial, Defendant shall have the right to depose that witness," as an argument that Defendants are prepared to depose any witness the Plaintiffs may now designate. Pls. Amend. Wit. at 6; Pls. Mot. Wit. at 4. Defendants' preparedness to defend its case and take depositions of witnesses that the Court might allow Plaintiffs to call, despite Defendants' objections, is no excuse for Plaintiffs' constant defiance of court orders to name their witnesses. It provides no basis whatsoever for the Court to reconsider its prior sanction for Plaintiffs' refusal to comply with the rules of the Court on multiple occasions. The Court could not have been clearer that failing to comply with Court orders *a second time* (even after several additional failures to adhere to deadlines imposed by procedural rules) would result in Plaintiffs' foregoing the presentation of witnesses at trial. Plaintiffs give no reason in their motions to file witness lists for the flagrant violations, and in fact fail to so much as acknowledge the violations in the first place. The Court finds no basis on which to grant Plaintiffs' leave to present a witness list. Plaintiffs' motions are therefore denied.

## III. CONCLUSION

Plaintiffs' counsel has openly and repeatedly violated specific directives of this Court, multiple Federal Rules of Civil Procedure, and local rules, yet asks the Court to reconsider an order that he consistently violated and continued to violate-even at the time he asked for reconsideration of the sanctions imposed as a result of his

violations. His motion for reconsideration is denied, and his motions for leave to file witness lists are granted insofar as they seek an expedited ruling but are otherwise denied. The Court's stay of the enforcement of its order of December 28, 2006, is hereby lifted, and Plaintiffs' counsel (not Plaintiffs themselves) is ordered to pay Defendants the cost of bringing their first motion to compel in the amount of $2,186.54 and the cost of bringing their second motion to compel in the amount of $1,923.25, or a total of $4,109.79, no later than August 10, 2007.

Parties are also ordered, in light of this Memorandum Opinion denying Plaintiffs' request for relief from imposed sanctions, to file a joint status report on the remaining issues for the Court to address in *Plaintiffs' Motion to Compel Answers to Interrogatories and for Sanctions and Request for Expedited Ruling*. The joint status report is due no later than August 3, 2007.

The Court also orders the Clerk to issue a copy of this Memorandum Opinion with the accompanying Order directly to Plaintiffs Mr. and Mrs. Williams.

An Order accompanies this Memorandum Opinion.

### APPENDIX

1. The original complaint was filed in this case on November 3, 2003.

2. On March 16, 2004, Plaintiffs' counsel requested, for a second time and with Defendants' consent, more time to respond to Defendants' motion to dismiss without providing any reason for the request to the Court. *See Unopposed Motion for Extension of Time to Respond to Defendants' Motion to Dismiss* [docket # 12]. The district judge granted the request and stated: "The Court reminds parties that they must supply reasons for requests for extensions to the Court when extensions are requested, even if unopposed. In the future, if no basis for the extension is provided, the extension will be denied." Minute Order, 3/17/2004.

3. On April 30, 2004, Defendants filed a renewed motion to dismiss, and on May 25, 2004, Plaintiffs filed an opposition to Defendants' renewed motion to dismiss. *See Plaintiffs' Response and Brief in Opposition to Defendants' Renewed Motion to Dismiss* [docket # 18]. The opposition mistakenly addressed the government's failure to address "Fourteenth Amendment violations," about which the court later explained it presumed Plaintiffs' intent was to address Fifth Amendment claims.[1] *Id.* at 10–15; *see also* Memorandum Opinion, 7/5/2005 [docket # 29] at 2 n. 2.

4. On September 2, 2004, prior to a ruling from the court on the Defendants' pending motion to dismiss, Plaintiffs filed a motion to compel an answer to the complaint and for mediation. *See Motion to Compel Answer to Complaint and Motion for Mediation* [docket # 20]. Despite the pending motion to dismiss that suspended Defendants' obligation to reply to the complaint under Federal Rule of Civil Procedure 12(a)(4), Plaintiffs argued that the government "wholly failed to answer the complaint relying instead on dispositive motions which have unreasonably delayed the judicial process and caused continuing injury to these suffering plaintiffs." *Id.* at 1. Plaintiffs' counsel requested that the court order mediation since the government's history of settling similar cases "in

---

1. Fourteenth Amendment claims may not, in any case, be brought against the federal government.

the early stage of litigation" is indication that the case would settle if mediation was ordered. *Id.* at 2. In naming, without citation, other settlements in similar cases, Plaintiffs' counsel claimed that those settlements "presumably" mean that "Defendant admitted in the USDA [United States Department of Agriculture] Civil Rights Action Team Report that it had in fact practiced country-wide wholesale discrimination against black farmers." *Id.* at 2–3.

5. On September 6, 2004, the district judge denied Plaintiffs' motion to compel an answer without awaiting Defendants' response. *See* Order, 9/26/2004 [docket # 21]. In so doing, the court urged Plaintiffs' counsel to re-read the Federal Rules of Civil Procedure, especially noting that Plaintiffs' counsel should be well aware that a motion to dismiss alters a defendant's timeline for responding to the complaint, a pattern of events that is "remarkably common." *Id.* at 2; *see also* Fed. R.Civ.P. 12. The district judge went on to say that the

> Court is at a loss to understand why Plaintiffs' counsel is unaware of the proper and routine operation of the Federal Rules of Civil Procedure. Defendant's Motion to Dismiss became ripe in June of 2004 and the Court is of course mindful that Plaintiffs seek a resolution of their case as quickly as possible, and the Court endeavors to move through its cases as efficiently as practicable. However, Plaintiffs' instant Motion is inappropriate and based on a faulty understanding of the Federal Rules of Civil Procedure.

*Id.* The court also cautioned Plaintiffs' counsel on his failing to provide citations to cases and federal rules on which he relied throughout his briefing, noting his failure to indicate on which rules of federal procedure he relied "for his ill-formed assertion that Defendants should be ordered to file an answer immediately." *Id.* The court informed Plaintiffs' counsel that it would immediately strike any pleadings with improper citations, as it was not the court's responsibility nor was it appropriate for the court to conduct an attorney's research. *Id.* The court urged both parties to contact chambers regarding mediation if both parties were so interested. *Id.* at 3.

6. On March 22, 2005, Plaintiffs filed their amended complaint. *See* Amended Complaint [docket # 27].

7. On July 5, 2005, the court granted the government's renewed motion to dismiss, which resulted in dismissal of all claims but the Equal Credit Opportunity Act ("ECOA") claim. *See* Order, 7/5/2005 [docket # 28]. Defendants had not sought to dismiss Plaintiffs' claims under the ECOA for denial of their 2003 loan application, so that claim was not dismissed. The government then requested and received more time to answer the remaining claim. *See* Minute Order, 7/14/2005.

8. The district judge referred the case for mediation before this judge on July 20, 2005, and issued the **first scheduling order,** with a discovery deadline of March 31, 2006, proponent's rule 26(a)(2)(B) statements due January 3, 2006, and Opponent's Rule 26(a)(2)(B) statements due February 10, 2006.[2] *See* Scheduling and Procedures Order, 7/20/2005 [docket # 35].

9. On August 15, 2005, Plaintiffs filed a motion for reconsideration of the court's order granting Defendant's motion to dismiss. *Motion to Reinstate and Transfer*

---

**2.** The docket entry for the first scheduling order contains a typing error, stating that discovery is due in 2005 instead of 2006.

Contract Claim to the U.S. Court of Claims and for Reconsideration of Dismissal of (sic) Constitution (sic) Claim Against Individual Defendants [docket # 36]. In their motion, Plaintiffs asked the district court to "reinstate and then transfer, by court order, their contract claim" to the United States Court of Claims, id. at 2, though all Plaintiffs needed to do to appear in the claims court was simply to file their claims there; no intervention from the district court was necessary. To support Plaintiffs' motion, counsel included excerpted sections of prior briefs to show that he had responded to Defendants' constitutional arguments in their motion to dismiss—except that the included sections did not refer to the constitutional claims at all, and some sections even referred to an erroneous argument based on the Fourteenth Amendment (which the district judge previously acknowledged as incorrect) as opposed to the Fifth Amendment. See id. at 11. Counsel further argued dismissal is a "harsh sanction" that would "break the elastic bounds of justice and equity for the court," id. at 15–16, though the dismissal in this instance was not a "sanction" but a ruling on the inability to state a justiciable claim.

10. On August 19, 2005, the government filed its answer to the amended complaint. See Answer on Behalf of Defendants Mike Johanns and United States of America [docket # 38].

11. On August 21, 2005, Plaintiffs' counsel suffered a stroke requiring hospitalization. See Plaintiffs' Motion to Enlarge Time to Amend Scheduling Order and Request for Expedited Ruling [docket # 47] ("Pls.Mot.Enlarge") at 1.

12. The Defendants served discovery requests on Plaintiffs on September 23, 2005. Defendants' Response to Plaintiffs' "Motion to Enlarge Time to Amend Scheduling Order and Request for Expedited Ruling" [docket # 48] ("Defs.Resp.Enlarge") at 1–2. According to the Federal Rules of Civil Procedure, Plaintiffs therefore had until October 24, 2005, to respond to the requests, confer with opposing counsel to request more time to respond, or, failing consent from the government, move the court for more time. See Fed.R.Civ.P. 33(b)(3). Plaintiffs' counsel did not do so.

13. On October 14, 2005, Plaintiffs' counsel filed a notice to the Court that he planned to call several officials from the United States Departure of Agriculture to testify at the "mediation hearing," then scheduled for November 3, 2005. Notice of Intent to Subpoena Witnesses [docket # 41]. The government responded four days later to inform the Court that if Plaintiffs did so, the government would move to quash the subpoenas. See Defendants' Response to Plaintiffs' Notice of Intent to Subpoena Witnesses [docket # 42]. Plaintiffs' counsel replied that his notice of intent to subpoena witnesses for mediation was a " 'good faith' effort to inform the Court and the Defendants that testimony from the purposed witnesses, not presently defendants, would serve judicial economy and put the entire matter before the Magistrate Judge should the Honorable District Court Judge Kotelly sustain Plaintiffs' motion for reconsideration [of order granting motion to dismiss]." Plaintiffs' Reply to Defendants' Response to Plaintiffs' Notice of Intent to Subpoena Witnesses [docket # 43] at 1. Plaintiffs' counsel also stated he "is fully aware of and will abide by the orders and the rules of the Court." Id. at 1–2.

14. The court denied Plaintiffs' motion to reinstate and transfer the contract claim and to reconsider its ruling on Defendants' motion to dismiss on October 24, 2005. See Order, 10/24/2005 [docket # 45]. As

to reinstatement and transfer of the contract claim to the United States Court of Claims, the court held that Plaintiffs gave no good reason for such a transfer or any reason why they "are either unable to bring the ECOA claim before the U.S. Court of Claims themselves or what disadvantage would accompany their directly presenting the ECOA claim to the U.S. Court of Claims." Memorandum Opinion, 10/24/2005 [docket # 46] at 7. After pointing out that Plaintiffs did not cite any legal standard under which they brought their motion to reconsider, *id.* at 4, the court similarly found that Plaintiffs provided no reason to reconsider the Fifth Amendment claim, and that

> Plaintiffs' use of nearly three pages of single-spaced, ten-point font block quotes of arguments that the Court already determined to be without merit [is] a waste of the Court's time in light of the fact that the Court explicitly stated in its [35] Scheduling and Procedures Order, filed July 20, 2005, that the Court would not entertain 'motions which simply reassert arguments previously raised and rejected by the court.'

*Id.* at 8 (internal citation omitted). The court dismissed the remainder of Plaintiffs' arguments for reconsideration as meritless. *Id.* at 8–9. The court finally dismissed Plaintiffs' arguments that dismissal of those claims imposed a harsh sanction "in short shrift, as Defendants' Motion to Dismiss was granted on the merits, and not as a sanction against Plaintiffs for some procedural misstep or as a deterrent." *Id.* at 10.

15. On October 30, 2005, following the October 24 deadline for Plaintiffs to respond to Defendants' discovery requests, Plaintiffs' counsel asked the Court to extend all deadlines ninety days due to the stroke he suffered in August and to his subsequent relapse due to "return[ing] to work too soon against doctor's orders." Pls. Mot. Enlarge at 1–2. He stated that Defendants consented to the extension. *Id.* at 2. The physician's statement Plaintiffs' counsel attached to the motion ordered Plaintiffs' counsel to abstain from work until November 10, 2005, and restricted him to no travel. The next day, the government filed a response indicating that it did not oppose the request to extend the deadlines 90 days but informed the court that Plaintiffs had not yet responded to their discovery requests, which Plaintiffs did not mention in their motion. *See* Defs. Resp. Enlarge at 1–2.

16. On November 1, 2007, the settlement conference was canceled,[3] and on November 7, 2005, the district judge granted the extension of all deadlines ninety days due to Plaintiffs' counsel's illness and required a status report be filed no later than January 15, 2006, with a newly proposed schedule. Minute Order, 11/07/2005.

17. Also on November 7, Plaintiffs' counsel's physician cleared Plaintiffs' counsel to travel to Washington, D.C., to appear before another judge in this court for another case. *See Notice of Counsel's Travel to Washington, D.C. on Matter Before Judge Emmett G. Sullivan* [docket # 50]. Plaintiffs' counsel filed a notice to the court to explain his travel to Washington, D.C., and appear in court on the other matter. *Id.* at 1. In his explanation, Plaintiffs' counsel complained of government attorneys unfairly criticizing him for being in Washington while under doctor's orders. *Id.* He stated that he did not want the court to think he had slighted or disrespected the court by participating in an-

**3.** The settlement conference was ultimately    rescheduled for March 2006.

other matter in a sister court, "nor [did] he want to give the DOJ attorneys another 'bullet' by which they can attempt to discredit (kill) Counsel." *Id.* at 2. Identical notices were docketed in this case and in *Bradshaw v. Veneman,* Civ. No. 04–1422, and in *Hildebrandt v. Veneman,* Civ. No. 04–1423 (Judge Friedman presiding), in which Plaintiffs' counsel to this case also serves as counsel to plaintiffs in actions against the USDA. The notice earned Plaintiffs' counsel a published opinion striking the notice from the record in *Bradshaw* and *Hildebrandt,* in which Judge Friedman stated:

> Mr. Myart's assertion that the opposing counsel are trying to kill him rises to a level of offensiveness that merits this notice being stricken from the record by the Court, sua sponte, under Rule 12(f) of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 12(f) (court may strike any pleadings that are "redundant, immaterial, impertinent or scandalous"). Although Mr. Myart places the word "bullet" in quotation marks, as if to imply that his meaning is figurative rather than literal, he goes on to use the word "kill" in parenthesis, which in the context of the dispute and his ongoing medical problems quite clearly and literally states (not implies) that the DOJ attorneys somehow intend him physical harm, or even death. This statement is outrageous, without support, and scandalous on every level. The opposing attorneys have litigated this case vigorously and in one instance challenged Mr. Myart's assertions personally, but they have done so with the civility and professionalism that is required of an attorney, even when the arguments being made have unpleasant implications. That, however, is the nature of litigation—to make good faith arguments and assertions that sometimes may offend the opposing party, whose view of the matter no doubt differs. However much these offenses may sting a party personally or occasionally a lawyer for the party in the course of litigation, they do not and cannot imply that one lawyer intends another physical harm without some extremely convincing proof. Zealous representation and vigorous disagreement do not constitute the requisite proof that government attorneys mean Mr. Myart personal harm. His statement that they hope to "kill" him is unwarranted and offensive.... This is not the first time that one of Mr. Myart's notices has been stricken from the record and docket of a case before this Court. In an opinion issued by this Court on January 3, 2005 in the case of *Pigford v. Veneman,* the Court struck two notices filed by Mr. Myart that accused opposing counsel, a Department of Justice attorney, of unprofessional conduct. 225 F.R.D. 54 (D.D.C.2005). The stricken notices were two of many that Mr. Myart had filed over a months-long period accusing opposing counsel of various misconduct, accusations that escalated at a hearing before the Court to ones of racism. The Court struck two notices, sua sponte, for reasons much the same as the ones given above and stated at the time that the flood of notices Mr. Myart had filed with the Court did not serve any "legitimate litigation-related purpose" and appear to be a form of grandstanding really addressed to other audiences. *Id.* at 59. Mr. Myart would be well advised to reread the *Pigford* opinion. Regardless, the Court reminds Mr. Myart now, as then, that "it is a privilege to practice law in this Court, not a right, and that the Court's docket is not a forum for personal attacks." *Id.* at 58 (citation omitted).

*See Hildebrandt v. Veneman,* 233 F.R.D. 183, 184 (D.D.C.2005).

18. After conferring with Plaintiffs' counsel to discuss new scheduling order dates, Defendants filed a status report and proposed scheduling order on January 13, 2006. *See Notice of Filing Agreed Status Report and Proposed Schedule* [docket # 51] ("Notice of Status Report"). The filing did not have the signature of Plaintiffs' counsel, however, because Defendants had not yet received it. *Id.* Plaintiffs' counsel engaged willingly in discussion with Defendants to finalize language but failed to sign and return the agreement despite twice emailed requests for signature. Notice of Status Report, Exhibit 1, Emails Between James Myart and Elbert Lin, 1/11/2006–1/12/2006.

19. The court accepted the dates proposed and adopted a **second scheduling order** on January 18, 2006, which required Plaintiffs to respond to Defendants' outstanding discovery requests by overnight delivery no later than February 15, 2006. Minute Order, 1/18/2006. The deadline for Proponent's Rule 26(a)(2)(B) statements was set for April 14, 2006, and for Opponent's Rule 26(a)(2)(B) statements, the deadline was set for May 17, 2006. *Id.* The new discovery deadline was set for July 19, 2006. *Id.*

20. On February 16, 2006, Defendants received Plaintiffs' responses to the discovery propounded in September of 2005. *Defendants' Memorandum in Support of Their Motion to Compel* [docket # 58] ("Defs. First Comp.") at 1. Defendants sent a letter to Plaintiffs' counsel outlining deficiencies in the responses on February 22, 2006, primarily involving Plaintiffs' responses of "will supplement" or that the documents or answers were in "defendant's file." *See id.* at 1–2; Defs. First Comp., Exhibit 9, Letter from Elbert Lin to James Myart, 2/22/2006. Defendants

asked Plaintiffs' counsel to provide revised responses by March 1, 2006. Defs. First Comp., Exhibit 9 at 3. Plaintiffs' counsel received the letter and responded via email that he would reply by March 1, 2006. Defs. First Comp. at 2; Defs. First Comp., Exhibit 11, Email from James Myart to Elbert Lin, 2/22/2006. He did not do so. Defs. First Comp. at 2.

The government emailed Plaintiffs' counsel on March 2, 2006, that supplemental responses were not received. *Id.;* Defs. First Comp., Exhibit 12, Email from Elbert Lin to James Myart, 3/02/2006. Plaintiffs' counsel did not respond. (Sometime later, Plaintiffs' counsel stated that he faxed supplemental responses that day but the government did not receive the fax. *See* ¶ 22 below.) Defendants informed Plaintiffs' counsel via email on March 3, two days after the deadline Plaintiffs' counsel accepted to supplement responses, that the government would file a motion to compel unless Plaintiffs' counsel sent supplemental responses or agreed to extend the discovery deadline. Defs. First Comp., Exhibit 13, Email from Elbert Lin to James Myart, 3/3/2006.

21. Also on March 3, 2006, Defendants faxed a request to this Court for a teleconference to reschedule the mediation set for March 9 due to Plaintiffs' inadequate discovery responses. Defs. First Comp., Exhibit 16, *Request for Teleconference.* On March 5, Plaintiffs' counsel filed a response to Defendants' request, claiming that the request to postpone settlement discussions was "based on [Defense counsel's] disingenuous complaints" and "merely a subterfuge for his ongoing position— the USDA will not, unless forced by the Court, compensate these Plaintiffs are (sic) any other black farmers for admitted discrimination." *Response to Motion for Teleconference* ("Response") at 1. Also in his response, Plaintiffs' counsel stated that

Defendants received "legally sufficient and adequate discovery in accordance with the rules. The fact that Defendant does not like the responses is irrelevant." *Id.* Plaintiffs had already purchased air tickets, hotel, etc., and did not want to reschedule the settlement. *Id.* at 2–3. Plaintiffs' counsel attached to the Response a statement of damages for Plaintiffs, which was initially provided to Defendants on October 4, 2005, prior to the court's ruling on Plaintiffs' motion for reconsideration. *See* Response, Exhibit 1, Robert and Laverne Williams Statement of Damages. In support of his argument that Defendants did have adequate information to attend mediation, Plaintiffs' counsel argued that the statement of damages was provided to Defendants "as early as October 4, 2005, . . . long before discovery was propounded on Plaintiffs." Response at 2. Discovery was propounded on Plaintiffs, however, on September 23, 2005. *See* Defs. Resp. Enlarge at 1–2. Also attached to the Response was a proposed settlement Plaintiffs' counsel submitted to Defendants on September 24, 2005, prior to the previously scheduled mediation in November 2005. Response, Exhibit 2, Pre–Mediation Settlement Proposal.

22. On March 6, 2006, Defendants received Plaintiffs' first supplementary discovery responses via fax and email. Defs. First Comp. at 7–8. Plaintiffs' counsel also emailed government counsel that he had initially faxed the responses on March 2, but no fax was received by the government on that day. *Id.* at 7. The government continued to complain of the deficiencies of the responses, where, for example, responses such as "will supplement" were deleted and instead simply left blank. *Id.* at 9.

23. This Court denied the government's request for a teleconference on March 8, and directed parties to appear on March 9 for settlement discussions as planned. *See* Minute Order, 3/8/2007. Government counsel alleged that, following the conference, Plaintiffs' counsel accused Defendants of racism, whereby Plaintiffs' counsel "directed belligerent statements towards [government counsel Elbert Lin] and Mr. Gibson, the representative from USDA," including derogatory remarks about strategy, that the Department is racist and that it acts and has acted in a racist manner, and that Lin and Gibson are racist. Defs. First Comp., Exhibit 20, Email from Elbert Lin to James Myart, 3/10/2006. Defendants informed Plaintiffs' counsel in an email that the comments were unfounded, inappropriate, and unprofessional, and that such behavior would not be tolerated in the future. *Id.* Plaintiffs' counsel replied via email, to wit:

> Mr. Lin, you can characterize my comments any way you see fit. I have a long history with 'you people,' and I know from where the DOJ and Sitcov deals with all these issues. Your toleration is on you. I will continue to handle my cases as I see fit and will call a 'spade a spade.' Do not pardon the pun. I will not tolerate a government that is mean-spirited, ruthless and uncaring and one that condoes (sic) econmic (sic) slavery and injury to people of color. My Constitution will not allow it!!!

Defs. First Comp., Exhibit 21, Email from James Myart to Elbert Lin, 3/10/2006.

24. Following the first mediation, Plaintiffs' counsel publicly filed a request for another settlement conference on March 14, 2006. *Motion for Mediation* [docket # 54, sealed]. In it, and in a supplemental memorandum, Plaintiffs' counsel described the very content of the confidential settlement discussions that occurred before the judge on March 9 and described legal aspects of the case. *Id.* at 1–2;

*Plaintiffs' Memorandum Submission on Mediation as Authorized by Magistrate Judge Facciola* [docket # 55, sealed] at 1–3. The government responded on March 16 via *in camera* submission and complained Plaintiffs' counsel's public filings breached the settlement confidentiality ordered by the court. *See Notice of In Camera Filing* [docket # 56] at 1–2. Plaintiffs' counsel replied to the government's filing that same day, again on the public docket. *See Plaintiffs' Reply to Defendant's In Camera Opposition to Plaintiffs' Motion for Mediation* [docket # 57, sealed].

On March 31, 2006, the Court ordered Plaintiffs' counsel to show cause as to why Plaintiffs' counsel should not be held in contempt for violating confidentiality orders relating to settlement discussions, and set a show cause hearing before the district judge. *See Order to Show Cause* [docket # 65, sealed]. In written response, Plaintiffs' counsel acknowledged he violated the rules without "cognitive intent," apologized, and requested to place his memorandum submission (docket # 55) under seal. *Motion to Seal Pleading and For For (sic) In Camera (sic) Inspection Submission* [docket # 66] at 2–3 (refiled twice on 4/17/2006 at docket # 66 and docket # 67). The district judge placed the requested and all other related pleadings under seal on April 19, *see* Minute Order, 4/19/2006, held a show cause hearing on April 20, and took the matter under advisement, *see* Minute Entry, 4/20/2006.

25. On March 21, 2006, the government filed its first motion to compel responses to discovery propounded in September of 2005. *See Defendants' Motion to Compel* [docket # 58]. In its memorandum of support for its motion, the government noted: (1) the inadequacies of answers such as "will supplement" or that the materials were "with defendant" as a response; (2) the deletion of "will supplement" in revised responses in exchange for leaving the response blank, so that there was no answer whatsoever to certain requests; and (3) counsel's failure to sign discovery responses in accordance with Rule 26(g)(2). Defs. First Comp. at 9, 17–18. Defendants stated that only a few documents had been produced in response to the government's fifteen document requests, and that privilege had been asserted, though no privilege log had been produced. *Id.* at 18–19.

In conjunction with its motion to compel, the government requested and Plaintiffs' counsel agreed to extend remaining discovery deadlines. *See Defendants' Motion for Extension of Remaining Deadlines* [docket # 59] at 4–5; *Plaintiffs' Response to Defendant's Motion to Extend Discovery* [docket # 60]. This led to a **third scheduling order,** whereby Proponent's Rule 26(a)(2)(B) statements were due June 16, 2006; Opponent's Rule 26(a)(2)(B) statements were due July 19, 2006, and all discovery was scheduled to close on September 20, 2006. Minute Order, 3/23/2006. The district court also referred the case to this judge for discovery. Order, 3/27/2006 [docket # 62].

26. On April 27, 2006, this Court granted Defendant's first motion to compel. *See* Order, 4/27/2006 [docket # 70]. In great detail, the Court reiterated the requirements under Federal Rules of Civil Procedure 33 and 34 regarding discovery responses and provided a chart as to the deficiencies of each initial and revised interrogatory response. *Williams v. Johanns,* 235 F.R.D. 116, 117–18 (D.D.C. 2006); Memorandum Opinion, 4/27/2006 [docket # 71] ("April 2006 Opinion") at 2–3. The Court ordered Plaintiffs to specifically supplement answers to specific interrogatories in specific ways, sign the responses as required by Rule 26(g), and

produce documents within ten days from the date of the order. *Williams*, 235 F.R.D. at 123–25; April 2006 Opinion at 11–14.

In its Order granting Defendants' motion to compel, the Court also required Plaintiffs' counsel to show cause as to why he should not pay Defendants' costs for bringing the motion to compel. *Williams*, 235 F.R.D. at 125; April 2006 Opinion at 16–17. Plaintiffs' counsel responded that he "offers no excuse except to say that he is beset with an overwhelming backlog of federal discrimination cases, administrative and in the district courts, against the USDA." *Response to Show Cause* [docket # 73] at 1. One week later, on May 15, 2006, the Court granted Defendants' request for Plaintiffs' counsel to pay costs for bringing the motion to compel. Minute Order, 5/15/2006. Plaintiffs' counsel did not seek review of the order until he requested reconsideration of all sanctions (the current motion) in January 2007.

27. On May 5, 2006, Paul Dean, current counsel for Defendants, took responsibility as government counsel and contacted Plaintiffs' counsel for available deposition and independent medical examination ("IME") dates for Plaintiffs in Washington, D.C., between May 15 and May 31, 2006. *See Defendants' Motion for an Independent Medical Examination of Plaintiffs, and for an Extension of Certain Deadlines* [docket # 78] ("Defs.Mot.IME"), Exhibit 1, Email from Paul Dean to James Myart, 5/5/2006, 3:28 PM. He also indicated an expectation that he would receive the notes and curriculum vitae of the Plaintiffs' treating psychologist within the week. *Id.*

28. Plaintiffs' counsel supplemented interrogatory responses on May 8, 2006, via email. Defs. Mot. IME, Exhibit 3, Email from James Myart to Paul Dean, 5/8/2006.

He also responded to Defendants' request for deposition and IME dates that he was unavailable in the month of May for depositions, and that attorneys "usually confer" before dates of depositions are selected, though that was precisely what government counsel was attempting to do. *See* Defs. Mot. IME, Exhibit 2, Email from James Myart to Paul Dean, 5/8/2006. Government counsel reminded Plaintiffs' counsel that his presence was not necessary for the IMEs and indicated a willingness to schedule the depositions for June, though he had hoped to avoid requiring Plaintiffs to travel to Washington twice. Defs. Mot. IME, Exhibit 1, Email from Paul Dean to James Myart, 5/8/2006, 4:34 PM. The government repeated its request for available dates and stated that without a response by May 12, a date would be set that was convenient for the government; the government further reminded Plaintiffs' counsel that the notes and curriculum vitae of the treating psychologist also were expected May 12. *Id.*

29. Two days later, on May 10, 2006, the government notified Plaintiffs that the revised supplemental responses received in response to court orders remained inadequate and Plaintiffs had yet to comply with court orders to produce documents. *Defendants' Memorandum in Support of Their Second Motion to Compel* [docket # 74] ("Defs.Sec.Comp.") at 2–3. Plaintiffs' counsel indicated additional responses would be forthcoming on May 12, 2006, eliminating any need for a second motion to compel. *Id.* at 3. Plaintiffs' counsel did not provide the supplemental answers as promised. *Id.* Plaintiffs' counsel also asked for the depositions to take place in Texas, where Plaintiffs reside, which the government refused since Plaintiffs filed suit in Washington, D.C. *See* Defs. Mot. IME, Exhibit 1, Email from Paul Dean to James Myart, 5/10/2006. The government

agreed, however, to Plaintiffs' counsel's request that depositions be scheduled twenty-one days in advance to allow cheaper travel arrangements. *Id.*

30. Since Plaintiffs did not supplement responses to discovery as promised, the government filed its second motion to compel on May 12, 2006. *See Defendants' Second Motion to Compel* [docket # 74] at 1. In its memorandum to support its motion, the government indicated that the responses submitted following court orders remained inadequate as many responses simply repeated the same answer the Court held insufficient, and no additional documents had been produced. Defs. Sec. Comp. at 1. Furthermore, Plaintiffs' answers were still not signed by counsel in violation of Rule 26(g) and the court's order of April 27, 2006. *Id.* at 8. Plaintiffs' counsel never opposed this second motion to compel.

31. On May 15, 2006, government counsel left two messages and an email for Plaintiffs' counsel asking for four additional weeks to file expert reports due to the outstanding IMEs of Plaintiffs. Defs. Mot. IME, Exhibit 1, Email from Paul Dean to James Myart, 5/15/2006. Plaintiffs' counsel replied with consent but wanted all deadlines again moved ninety days. Defs. Mot. IME, Exhibit 1, Email from James Myart to Paul Dean, 5/16/2006. The next day, the government filed a request for more time to complete and exchange expert reports due to outstanding discovery from Defendants, though discovery would still close September 20, 2006. *See Defendants' Second Motion for Extension of Certain Discovery Deadlines* [docket # 75]. The Court granted the government's request. Minute Order, 5/17/2006.

Meanwhile, on May 19, the government indicated to Plaintiffs' counsel via email that it did not consent to moving all dead-lines 90 days, but reiterated the government's willingness to conduct the IMEs and depositions at the same time in Washington to ease the travel burden on Plaintiffs, and to schedule each at least twenty-one days in advance to minimize costs. Defs. Mot. IME, Exhibit 1, Email from Paul Dean to James Myart, 5/19/2006. In the same email, the government reminded Plaintiffs' counsel once again that documents still had not been produced in compliance with the court's order of April 27. *Id.* Toward the end of May and again in June, government's counsel attempted to contact Plaintiffs' counsel to schedule the depositions and IMEs. Defs. Mot. IME, Exhibit 1, Emails from Paul Dean to James Myart, 5/25/2006, 6/22/2006. He did not hear a response from Plaintiffs' counsel until June 22, when Plaintiffs' counsel explained that he had been placed on bed rest by his physician, asked government counsel not to schedule depositions until further notice, and stated his intention to file a motion to extend all deadlines generally. Defs. Mot. IME, Exhibit 1, Email from James Myart to Paul Dean, 6/22/2006.

32. On July 5, 2006, Defendants moved the Court to compel IMEs and for additional discovery extensions to again accommodate the IMEs and need to supplement insufficient discovery responses. *See* Defs. Mot. IME at 1. In the memorandum in support of their motion, Defendants pointed out Plaintiffs' counsel's continued failure to comply with the Court's order of April 27, 2006, and to adequately supplement interrogatories (without duplicating answers previously held by the Court as deficient) and respond to document requests. *Memorandum in Support of Defendants' Motion for an Independent Medical Examination of Plaintiffs, and for an Extension of Certain Deadlines* [docket # 78] ("Defs.Mem.IME") at 1–3. On July

17, Plaintiffs' counsel filed an opposition to Defendants' motion, but the filing was incorrect (it was filed in reverse) and the clerk ordered Plaintiffs' counsel to refile it. *See* Notice of Corrected Docket Entry, 7/18/2006. He did not do so until the government alerted the Court on July 25 that the opposition was still technically not filed as it had been stricken, and thus the government's motion could have been granted as conceded. *See Defendants' Second Notice Under LCvR 7(b)* [docket # 81].

33. Prior to correcting the improperly filed opposition to Defendants' motion as instructed by the court, on July 27, 2006, Plaintiffs' counsel filed another request to extend discovery ninety days, explaining to the court **for the first time** that Plaintiffs had been unable to assist counsel in responding to discovery due to Mrs. Williams's health issues and the impact of her health issues on the well-being of Mr. Williams. *Plaintiffs' Motion to Amend Sceduling (sic) Order* [docket # 82] at 1. Plaintiffs' counsel claimed that government counsel initially agreed to the extension but withdrew consent after speaking with his superiors. *Id.* at 2. Ignoring that the district court had concluded that it did not have jurisdiction over the contract claims, Plaintiffs' counsel also argued in this motion that Michael Sitcov at the Department of Justice had "forced" Plaintiffs to litigate in two different forums, causing additional demands on counsel. *Id.* A footnote also included Plaintiffs' counsel's allegations that Mr. Sitcov accused him of being a racist and anti-Semitic, and that Mr. Sitcov held his personal dislike of Plaintiffs' counsel against his clients. *Id.* at 2 n. 1.

Later on July 27, Plaintiffs' counsel refiled the opposition to Defendants' motion correctly, though he did so ten days after the clerk told him the initial filing was stricken and eleven days after the opposition was due. *See Plaintiffs' Response to Defendants' Motion for an Independent Medical Examination of Plaintiffs, and Extension of Certain Deadlines* [docket # 83] ("Pls.Resp.IME"). He offered no explanation for the delay. He stated that Plaintiffs were not opposed to the IMEs, only to having the IMEs in Washington. *Id.* at 1. The filing included a letter from the psychologist for Plaintiff Laverne Williams, Dr. Hinson, that stated he did not find it advisable for Mrs. Williams to "participate in court/mediation proceedings **that require travel** at this time" [emphasis added]. Pls. Resp. IME, Exhibit 1, Letter of Waymon R. Hinson to James Myart, Jr., 7/17/2006 at 1. In reply, the government cited months of effort to schedule the IMEs and Plaintiffs' counsel's outright refusal to respond. *Reply in Support of Defendants' Motion for an Independent Medical Examination of Plaintiffs, and Extension of Certain Deadlines* [docket # 84] at 2–3. Government counsel also indicated that Plaintiffs' counsel's assertion that he initially agreed to the proposed extension was false. *Id.* at 2 n. 3. The government opposed an additional extension of discovery and informed the Court again that Plaintiffs had yet to propound any discovery on Defendants. *Id.* at 3.

34. During this same time period, on July 31, 2006, the government noticed Plaintiffs' counsel of depositions of third-party independent witnesses to take place in Texas on August 22 and August 23, 2006. *See Emergency Motion to Quash Depositions* [docket # 87] ("Pls.Mot.Quash"), Exhibit 1, Subpoenas. Plaintiffs' counsel told Defendants he was unavailable at that time and that he would only be available for depositions following the close of discovery, then scheduled for September 20, 2006. Pls. Mot. Quash,

Exhibit 2, Email from Paul Dean to James Myart, 8/21/2006; *see also* Transcript of Discovery Status Conference, 11/17/2006 ("Tr.11/17/06") at 21. On August 21, Plaintiffs' counsel filed a notice to the Court to explain the outstanding discovery issues and accused government counsel of an inability to maintain professionalism due to his supervisor. *See Notice to the Court* [docket # 86]. He also filed emergency motions to quash the subpoenas of the third-party witnesses noticed for the next two days, three weeks after the government first issued the notices. *See generally* Pls. Mot. Quash. He accused government counsel of refusing to accommodate his schedule by failing to consult with him before issuing the subpoenas, which caused his clients increased suffering. *Id.* at 2. He did not acknowledge Defendants' counsel contacting him regarding the depositions on July 31, nor his own response to Defendants' counsel on August 15. *See* Tr. 11/17/06 at 21. Plaintiffs' counsel also did not indicate any of his own efforts to contact government counsel regarding the depositions noticed three weeks earlier.

On August 23, Plaintiffs' counsel contacted this judge's chambers to complain of government counsel's attendance at a deposition in Sweetwater, Texas, where Plaintiffs' counsel did not appear, and was told any objections to the depositions must be made in writing and not on the telephone to the judge, even with government counsel on the line.

35. The next day, on August 24, 2006, the Court suspended all discovery and stayed the case until a scheduled status conference on October 12, 2006, which followed the most recently rescheduled discovery deadline of September 20, 2006. Minute Order, 8/24/2006. On October 12, Plaintiffs' counsel failed to appear at the status conference as ordered. *See* Minute Entry, 10/12/2006. The Court issued an order to show cause, to which Plaintiffs' counsel responded with an explanation that he did not differentiate between hearings set by this judge and the district judge, and therefore the cancellation of a hearing by the district judge caused him to erroneously conclude that this judge likewise cancelled a scheduled hearing before him. *Response to Show Casue (sic) Order Issued 10/12/06 By Judge Facciola* [docket # 88] at 2. The show cause order was discharged without penalty and a new status date was set for November 17, 2006. Minute Order, 10/26/2006.

36. On November 17, 2006, status hearings were held before both Judge Kollar–Kotelly and this Court. At the discovery status hearing in this Court, the government argued for dismissal of the case in light of Plaintiffs' counsel's failure to propound any discovery and to obey this Court's orders, a failure that led to Defendants' second motion to compel. Tr. 11/17/06 at 6. Plaintiffs' counsel represented that the delay in responding to previous discovery was due to the fact that Mr. Williams could not read and to the health issues of Mrs. Williams, issues which were now resolved; "Now, your Honor, here's my point. I have suggested that Ms. Williams now is capable of providing counsel with the necessary intelligence, so to speak, even in the English language, of answering specifically those matters and providing the production." *Id.* at 8–9. Plaintiffs' counsel also argued that the documents the government sought in their discovery were their own. *Id.* at 9. When asked by the Court if Plaintiffs had any such documents in their possession, Plaintiffs' counsel responded he did not know but, if so, he could turn them over within thirty days. *Id.* at 9–10.

The government again moved to dismiss the case for a failure to prosecute due to Plaintiffs' repeated discovery violations, but this Court (i.e., Magistrate Judge Facciola) did not have jurisdiction to consider the question of dismissal. *Id.* at 23.

When the Court asked how much more time was needed to complete discovery, Plaintiffs' counsel suggested providing all supplemental discovery responses by January 12, 2007, and taking depositions in February of witnesses and of experts in March. On the question of IMEs, the government argued the examinations should take place in Washington, D.C., since Plaintiffs chose to bring suit here. *Id.* at 10. Plaintiffs' counsel conceded this was the usual course, but in the present instance, justice required conducting the examinations in Texas. *Id.*

37. Ostensibly in support of his request to extend discovery, on December 4, 2006, Plaintiffs' counsel filed a notice to the Court to describe "Laverne Williams' medical incapacity to assist counsel in preparation of discovery and inability to travel to Washington, D.C." *Notice to the Court,* 12/4/2006 [docket # 89] ("December Notice"). He attached a questionnaire, authored by Plaintiffs' counsel and completed by Dr. Judy Clayton, Mrs. Williams's treating doctor, which included a statement that Mrs. Williams "is not able" to participate with her lawyer in her case. December Notice, Exhibit 1, Responses to Letter from James Myart by Dr. Judy Clayton, 11/27/2006. However, the diagnostic sheet attached stated only that Ms. Williams could not "make the trip to Washington, D.C., that the lawyers are requesting." December Notice, Exhibit 2, Diagnostic Statement of Laverne Williams at 1. The doctor did "not want her to travel until her blood pressure and her diabetes are well controlled which is going to be at least not until late January or early February." *Id.*

38. On December 28, 2006, this court issued a **fourth scheduling order,** which set a new discovery deadline of March 1, 2007, and granted Defendants' unopposed second motion to compel. Order, 12/28/2006 [docket # 91] at 23. In granting the second motion to compel, the Court sanctioned Plaintiffs for disregarding the Court's previous order and repeating responses that the Court held to be insufficient, and found other responses inadequate and in need of supplementation. *Williams v. Johanns,* Civ. No. 03–2245, 2006 WL 3826967 at *3–*7 (D.D.C. Dec. 28, 2006); *see also* Memorandum Opinion, 12/28/2006 [docket # 92] ("December 2006 Opinion") at 11–16. Plaintiffs were ordered to supplement responses and produce documents within ten days from the date of the order. *Williams,* Civ. No. 03–2245, 2006 WL 3826967 at *10; December 2006 Opinion at 24. Excluding holidays, weekends, and court-ordered recess, the deadline to supplement discovery and otherwise comply with the order was therefore January 16, 2007.

Specifically, Plaintiffs were to supplement specific interrogatories with (1) the names of persons with knowledge of facts surrounding the case; (2) a greater description of how named individuals conspired to deny Plaintiffs the 2003 farm operating loan; (3) more specific answers than a reference to a "file," which the Court previously held to be an insufficient answer; (4) the formula used to reach the damages requested; (5) a description of Plaintiffs' financial status (other than the single word "None"); and (6) the sources of information used to answer interrogatories other than Plaintiffs' counsel. *Williams,* Civ. No. 03–2245, 2006 WL 3826967 at *3–*5; December 2006 Opinion at 11–15.

Additionally, the Court sanctioned Plaintiffs for violating the Court's previous order of April 27, 2006, by "supplementing" certain answers to interrogatories with the exact same answers the Court previously found unacceptable. *Williams,* Civ. No. 03–2245, 2006 WL 3826967 at *5–*7; December 2006 Opinion at 15–18. Due to this duplication of insufficient answers, specifically the Court (1) limited production of evidence regarding similarly situated white farmers described in response to Interrogatory 8 to the two names Plaintiffs provided; (2) limited evidence regarding medical treatment of Plaintiffs described in response to Interrogatory 12 to the medical report of Dr. Wayne Hinson (besides the fact that the report itself was not produced with the interrogatory responses); (3) prohibited Plaintiffs from introducing any additional evidence regarding the legal contention described in Interrogatory 14; (4) limited document production relating to damages claims, and further required the documents identified to be produced to Defendants **within ten days;** and (5) required Plaintiffs to provide "a list of all potential lay and expert witnesses known at this point in the case **within ten days of this memorandum opinion or forego the introduction of witnesses at trial."** *Williams,* Civ. No. 03–2245, 2006 WL 3826967 at *5–*7; December 2006 Opinion at 15–18 (emphasis added).

Thus, even though Plaintiffs were sanctioned for disregarding previous orders of the Court, the Court gave Plaintiffs an opportunity to avoid significant aspects of those sanctions by responding to the Court's order within ten days. Plaintiffs failed to comply with any of the directives regarding sanctions for supplemental discovery responses. Indeed, Plaintiffs' counsel failed to do anything at all.

The Court also required parties to submit a joint discovery plan within the same time frame. *Williams,* Civ. No. 03–2245, 2006 WL 3826967 at *9; December 2006 Opinion at 23. To accommodate the health issues of Plaintiffs and the need to conduct IMEs and depositions, the Court ordered the government to provide three possible dates for both to occur in Texas; if Plaintiffs or Plaintiffs' counsel could not agree to the proposed dates for depositions and IMEs in Texas, Plaintiffs were to propose dates to appear in Washington. *Williams,* Civ. No. 03–2245, 2006 WL 3826967 at *9; December 2006 Opinion at 23. Regardless of their location, IMEs were to be completed by February 16, 2007. The Court specifically stated: "No additional extensions of time to conduct discovery will be granted." *Williams,* Civ. No. 03–2245, 2006 WL 3826967 at *9; December 2006 Opinion at 23.

Additionally, Plaintiffs' counsel (not Plaintiffs themselves) was ordered to pay fees and expenses incurred by the government for having to move to compel twice. *Williams,* Civ. No. 03–2245, 2006 WL 3826967 at *10; December 2006 Opinion at 24. Plaintiffs' counsel did not seek review of either order on costs until moving for reconsideration on January 30, 2007.

39. The government attempted to contact Plaintiffs' counsel on January 11, 12, and 16, 2007, to comply with court orders regarding a joint discovery plan. *Notice to the Court Regarding a Joint Discovery Plan* [docket # 94] at 1. Plaintiffs' counsel never responded. *Id.* Thus, Defendants filed a notice to the Court on January 16, 2007, that they were unable to produce the "joint" discovery plan without input from Plaintiffs' counsel. *Id.* at 2.

40. January 16 also passed without Plaintiffs' counsel providing any supplementary interrogatory responses as ordered, any document production as or-

dered, or a witness list as ordered. Nor did Plaintiffs provide the Rule 26(a)(2) statement as required under the fourth scheduling order.

41. On January 22, 2007, judgment was entered against Plaintiffs' counsel (not Plaintiffs themselves) to pay the government $1,923.25 for the cost of Defendants bringing their second motion to compel, due no later than February 2, 2007. *See Judgment* [docket # 95].

42. Also on January 22, the government sought an emergency telephone conference with the Court and Plaintiffs' counsel due to Plaintiffs' counsel's failing to provide a Rule 26(a) statement, revised interrogatories, revised document production, or certification of discovery responses as the Court ordered him to do on December 28, 2006. *Defendants' Emergency Motion for Immediate Teleconference* [docket # 96] at 1–2. Depositions of Plaintiffs were scheduled for the following week, but government counsel argued that the deposition dates were meaningless without his receiving and having time to review Plaintiffs' discovery responses. *Id.* at 1–2. The Court granted the request for a conference and held the emergency telephone conference on January 24, 2007.

43. At the telephone conference on January 24, 2007, Defendants acknowledged receipt of supplemental interrogatory responses out of time the previous evening but continued to complain of their inadequacy. Transcript of Telephone Status Conference, January 24, 2007, at 2–3. Plaintiffs' counsel had nonetheless failed to provide a Rule 26(a) statement, failed to provide Defendants with revised responses to their requests for production, and failed to provide certification by counsel of discovery responses, all in violation of the Court's order of December 28, 2006. *Id.* at 3. Plaintiffs' counsel agreed that he had

not complied, *id.* at 5–6, but that "it really didn't matter" because "this Court is going to force [Mrs. Williams] to travel to San Antonio" for her deposition despite her illness, *id.* at 6, 9. Plaintiffs' counsel also indicated the expert report was in the process of being prepared by Mr. John Sweigert, who needed to consult with an unidentified Ms. Weeks in order to complete the report. *Id.* at 7. Moreover, Plaintiffs' counsel explained that he was unavailable for the depositions due to a previously scheduled deposition in another court and that government counsel sent the deposition notices out for the following week "without conferring" with him. *Id.* at 5. He accused the government and the Court of forcing Mrs. Williams, "a feeble, sick person," to travel for a deposition 450 miles from where she lives. *Id.* at 7.

Government counsel responded that he had attempted several times (in as many as four emails) to contact Plaintiffs' counsel to ask whether San Antonio was the preferred location since Plaintiffs' counsel had indicated so previously. *Id.* Plaintiffs' counsel never responded to any of his inquiries. *Id.* at 8. When asked what he made of the government's representations to his lack of response to previous scheduling inquiries, Plaintiffs' counsel stated:

I don't make anything of it, Your Honor ... because it is clear to me and it has been from the very first day of mediation on this case where the Court stands on the case and its subsequent order in the case. That's very clear to me. My clients have been placed at a distinct disadvantage by the Court, condoning the conduct of the government [I]t's clear to me that the government is going to crush these people with the support of the Court.

*Id.* at 10–11. Furthermore, Plaintiffs' counsel informed the Court that it would be getting "another one of these letters"

from Mrs. Williams's doctor, "which means you probably won't even get to do the IME. Because I'm not going to force this elderly lady, who has had two heart attacks, to travel here to suit the fancy of the Almighty United States of America." *Id.* at 12. He went on to say that the statement of the physician "is the controlling factor, even controlling over any order of the Court." *Id.* at 13. "I don't know what the quagmire is with the United States government and I don't understand, with all of their money and all the lawyers that they have, why it's so urgent to put it onto these poor people the way that they're attempting to do and with the support of the Court." *Id.* at 16.

The following day, this Court suspended all discovery and stayed the case until such time a conference could be arranged with Mrs. Williams's doctor to more clearly understand what she meant in her filings to the Court and to determine whether Mrs. Williams was able to proceed with her claims in her selected forum. Minute Order, 1/24/2007.

44. Despite the Court's suspension of discovery and stay of the case, Plaintiffs' counsel filed an emergency motion to quash the subpoenas and IMEs. *Plaintiffs' Emergency Motion to Quash Noticed Depositions and Independent Medical Evaluations, Request to Stay All Proceedings, Request for Status Conference Before the Honorable District Judge, and Request for Expedited Ruling* [docket # 97] ("Pls.Em.Mot.Quash"). In the motion, Plaintiffs argued a position of "impossibility of performance" and accused this Court of impropriety in that the "harshness express[ed] in the Judge Faciolla's (sic) rulings and during the hearing are for reasons other than matters relating to discovery." *Id.* at 2. Counsel requested a confidential hearing with the district judge to discuss these other rea-

sons. *Id.* at 3. Another letter from Dr. Clayton was attached that stated one line: "Mrs. Williams is not medically capable of traveling and/or participating in the litigation." Pls. Em. Mot. Quash, Exhibit 1, Letter from Judy P. Clayton to Whom It May Concern, 1/25/2007.

In a written order, the district judge denied Plaintiffs' motion to quash as moot and denied Plaintiffs' counsel's request for a status conference before her. Order, 1/26/2007 [docket # 99]. After hearing the tape of the previous telephone conference before this Court, the district judge found no need for a status hearing as it was "not surprising" that this Court "expressed shock" at the "cavalier and contumacious response by an attorney [Plaintiffs' counsel], as an officer of the Court, interacting with a judicial officer." *Id.* at 3.

45. On January 30, 2007, Plaintiffs' counsel filed his first motion for reconsideration of the imposition of sanctions ordered on December 28, 2006, due to "impossibility of performance by Counsel" as a result of Mrs. Williams's illness. *Plaintiffs' Motion for Reconsideration of Imposition of Sanctions Against Plaintiffs and Counsel for Failure to Respond to Discovery* [docket # 100] at 3. The government did not respond.

46. On February 7, 2007, this Court, in the presence of the district judge, held a telephone conference with counsel, Mrs. Williams, and Dr. Clayton, Mrs. Williams's treating doctor, to ascertain what Dr. Clayton meant in her letter of January 25, 2007, when she stated that Mrs. Williams could not "participate in the litigation." The hearing made clear that Dr. Clayton meant by that statement that Mrs. Williams could not travel to Washington, D.C. *See* Transcript of Telephone Status Conference, February 7, 2007 ("Tr.2/7/2007") at 7 (THE MAGISTRATE JUDGE: "In your letter of January 25th,

2007, you indicated she was not medically capable of traveling and/or participating in the litigation. What was your understanding of the words 'participating in the litigation'? What did you mean?" DR. CLAYTON: "Well, at the time I thought the problem was travel to Washington, D.C. ... I thought that she would have to travel to Washington, D.C. ... I don't know if I misunderstood, but I thought that was the problem. . . . I thought she would have to travel to Washington, D.C."). Dr. Clayton indicated belief that Mrs. Williams was fully capable—at the time she authored the letters for the Court—of speaking with her attorney, answering interrogatories, gathering documents for her attorney, and sitting for a deposition with appropriate breaks. *Id.* at 7–8. She also indicated Mrs. Williams would be able to travel to San Antonio from her home in Sweetwater, Texas, if appropriate breaks were given as needed ("My only concern would be too much strenuous activity," *Id.* at 6). Mrs. Williams, who agreed that she could answer questions and gather documents, did not believe she could travel to San Antonio due to poor circulation. *Id.* at 9. Dr. Clayton indicated this was indeed a problem of comfort but not life-threatening. *Id.* at 11–12.

47. Following the conference with Mrs. Williams's doctor, Plaintiffs' counsel filed the current amended motion for reconsideration of the Court's order of December 28, 2006. *See Plaintiffs' Amended Motion for Reconsideration of Imposition of Sanctions Against Plaintiffs and Counsel for Failure to Respond to Discovery* [docket # 101]. Relying on the telephone conference held on February 7 for support, Plaintiffs' counsel argued that Plaintiffs had been unable to perform due to "what are essentially acts of God." *Id.* at 4.

The government filed its succinct opposition to the amended motion for reconsideration on February 22, 2007, arguing that the telephone conference with Dr. Clayton only revealed the inability of Mrs. Williams to travel to D.C., which was not at issue. *Defendant's Opposition to Plaintiffs' Motion for Reconsideration of Imposition of Sanctions* [docket # 103] at 1–2. On February 23, 2007, Plaintiffs' counsel replied to the government's opposition and argued that the Court had **only** inquired of Mrs. Williams's *future* ability to participate in the discovery process. *See Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Amended Motion for Reconsideration of Imposition of Sanctions Against Plaintiffs and Counsel for Failure to Respond to Discovery* [docket # 104] at 2–3. Counsel did not "recall the Court asking one single question of Dr. Clayton or Mrs. Williams regarding Mrs. Williams' past inabilities to participate in the case." *Id.* at 3. The Court, however, had specifically asked Mrs. Williams's treating doctor what she meant *previously* by Mrs. Williams's "inability to participate in the litigation." *See* Tr. 2/7/2007 at 6–8.

48. In the interim, on February 15, 2007, Plaintiffs' counsel filed an emergency motion to stay imposition of sanctions pending the outcome of his amended motion for reconsideration. *Plaintiffs' Emergency Motion to Stay Enforcement of Court Order Pending Review of Amended Motion for Reconsideration of Imposition of Sanctions Against Plaintiffs and Counsel for Failure to Respond to Discovery and Request for Expedited Ruling* [docket # 102]. The Court granted Plaintiffs' counsel's request the following week. Minute Order, 2/21/2007. The previously suspended deadline for completing the IMEs of February 16 passed pursuant to the Court's stay of January 25, as did the March 1 discovery deadline.

49. As the motion for reconsideration remained pending, Plaintiffs moved for a new scheduling order and trial date on March 19, 2007, due to the stay imposed as a result, "presumptively, to Plaintiff Laverne Williams' medical condition and past inability to participate in the litigation and help Counsel in preparation of offensive and defensive discovery and all other aspects of the case." *Motion for Issuance of New Scheduling Order and for Setting of Trial Date* [docket # 106] ("Pls.Mot.Sched.") at 2. Counsel acknowledged that Plaintiffs had yet to propound any discovery whatsoever upon Defendants. *Id.* at 3. He cited four reasons for issuing a new scheduling order: (1) Mrs. Williams's medical condition; (2) Mr. Williams's illiteracy; (3) the Court's "bifurcation" of the case and subsequent requirement that Plaintiffs' counsel litigate the contract claim in claims court; and (4) counsel's own medical condition during the course of litigation. *Id.* at 5. To support his request, Plaintiffs' counsel then simply instructed the Court to read a list of certain pleadings. *Id.* at 6–8. In reference to the previously ordered sanctions, counsel noted that, "Counsel, still, is under severe hardship as he and Plaintiffs may yet suffer financial sanctions as the Court has not ruled on the reconsideration of sanctions motions now pending." *Id.* at 9. Plaintiffs, however, faced no threat of financial sanctions; only Plaintiffs' counsel did. *See Williams,* Civ. No. 03–2245, 2006 WL 3826967 at *9; December 2006 Opinion at 24. Plaintiffs' counsel also erroneously referred to defense counsel's efforts in two other cases before this Court, though Paul Dean, defense counsel to this case, had nothing to do with either of the other cases cited. *See* Pls. Mot. Sched. at 11–12. Plaintiffs' counsel also attached discovery he planned to propound to Defendants and claimed he had conferred

with government counsel on the motion. *Id.* at 14; Pls. Mot. Sched., Exhibit 1, Plaintiffs' First Set of Interrogatories to Defendant Mike Johanns; Pls. Mot. Sched., Exhibit 2, Plaintiffs' First Set of Requests for Production to Defendant Mike Johanns.

The government opposed Plaintiffs' motion on April 2, 2007, arguing that "Plaintiffs' seek nothing less than a do over of the entire discovery period," and in it narrated Plaintiffs' counsel's previous refusals to comply with multiple set schedules and court orders. *Defendants' Opposition to Plaintiffs' Motion for Issuance of New Scheduling Order and for Setting of Trial Date* [docket # 107] at 1–7. The government also indicated that Plaintiffs' counsel, after four months, had still not complied with the Court's order of December 28, 2006 (or the Court's order of April 27, 2006), in that Plaintiffs had failed to provide any responses to requests for production, certification of their discovery responses, Rule 26 reports, or any witness lists, and the third round of interrogatory responses continued to violate court orders. *Id.* at 1–2. Moreover, Defendants' pointed out that, in support of his motion, Plaintiffs' counsel falsely represented that no depositions had been taken in this case, though four depositions had been taken in August 2006 by Defendants. *Id.* at 2. Plaintiffs did not reply to the opposition.

50. On April 24, 2007, this Court issued an order lifting the stay of discovery and set a **fifth scheduling order** in the case, with discovery to close May 30, 2007. Order [docket # 109], 4/24/2007. Counsel were ordered to confer by telephone and propose a schedule for Plaintiffs' certification of discovery, Plaintiffs' supplementation of interrogatories and document production, the service of any discovery by Plaintiffs and Defendants' responses thereto, remaining times and locations of depo-

sitions, IMEs, and anything else of which the Court should be aware. *Id.* at 1–2. On May 1, the parties filed a joint request to extend the discovery deadline to June 15, which the Court granted three days later, along with the parties' proposed scheduling order in its entirety. Minute Order 5/11/2007. Also on May 1, Plaintiffs propounded discovery on Defendants. *See Agreed Upon Proposed Discovery Schedule* [docket # 111] at 2.

51. Shortly thereafter, in early May 2007, Plaintiffs' counsel emailed government counsel a request to present a witness list. *See Plaintiffs' Motion for Leave to File Witness List and Respectful Request for Expedited Ruling* [docket # 112] at 2. The government refused. *Id.* Plaintiffs' counsel repeated the request on May 15, and again the government refused. *Id.* at 4. Plaintiffs' counsel then moved the Court to present a witness list on May 16, 2007, and argued that "Defendant is applying a Court ordered sanction in denying Plaintiffs' request to submit a witness list." *Id.* at 3. He stated that if Plaintiffs' motion is denied, "Plaintiffs' case will be eviscerated. In other words, Plaintiffs' case will be dealt the 'death penalty.' Plaintiffs will be unable to present expert testimony on damages, compensatory and special ... Plaintiffs will essentially be denied their day in Court." *Id.* at 4. Plaintiffs' counsel claimed the government had "actual notice" of proposed witnesses Dr. Clayton and Dr. Hinson due to interrogatory responses. *Id.* Plaintiffs' counsel also included other names of proposed witnesses that he did "not mention in any prior proceeding." *Id.* at 5.

52. On May 18, 2007, Plaintiffs' counsel filed a "Notice of Compliance" to the Court that he followed orders of May 4 to supplement discovery responses to Defendants by May 21, 2007, and attached the supplemental responses and certification of the responses by Plaintiffs. *Plaintiffs' Notice to the Court of Compliance with Scheduling Order Regarding Delivery of Disovery (sic) Responses and Signed Verifications to Defendants* [docket # 113] ("Pls.Not.Responses"). The supplemental responses did not, however, include certification by Plaintiffs' counsel as required by Rule 26(g), and many required additional supplementation at a later date and/or upon Plaintiffs' receipt of Defendants' responses to their discovery requests. *See* Pls. Not. Responses, Exhibit 1, Plaintiffs' Supplemental Responses to Defendants' First Set of Interrogatories, at 7, 9, 14, 15–16, 20. On May 21, the deadline for Plaintiffs to provide certification of discovery responses with supplemental responses and the Rule 26 statements, Plaintiffs' counsel contacted government counsel to inform him of his involvement in a jury trial in San Antonio and the anticipated delivery of two packages of supplemented discovery responses. *See Notice of Counsel's Due Diligence and Engagement in Federal Jury Trial* [docket # 115] ("Pls.Not.Trial") at 1–2.

In response, government counsel emailed Plaintiffs' counsel to indicate that, as discussed that morning, (1) certifications received were from Plaintiffs themselves, not counsel, contrary to the requirements of Rule 26(g); (2) interrogatory responses remained incomplete and did not answer deficiencies described in his email of May 4; (3) he still had not received documents in response to Defendants' requests for production, including those used to support interrogatory responses as ordered December 28, 2006; and (4) no expert reports had been provided. *Id.* at 2–3 n. 1. The government then filed an opposition to Plaintiffs' motion for leave to file a witness list on May 22. *See Defendants' Opposition to Plaintiffs' Motion for Leave to File Witness*

*List and Respectful Request for Expedited Ruling* [docket # 114].

53. The next day, Plaintiffs' counsel filed another Notice to the Court of his diligence in responding to court orders and his engagement in a trial in San Antonio. Pls. Not. Trial, at 1–4.

54. On May 24, 2007, government counsel, via telephone, requested a telephone conference with the Court to discuss discovery. The conference took place on May 25, in which government counsel continued to express dissatisfaction with interrogatory responses, inadequate document production, and lack of Rule 26(a) reports. Transcript of Telephone Status Conference, 5/25/2007, at 2–3. The government felt unable to go forward with depositions and IMEs of Plaintiffs scheduled for that week in Texas. *Id.* at 3. Plaintiffs' counsel argued that discovery responses were complete and accurate, though government counsel may not like the responses provided. *Id.* at 3–4. He also referred to his previous notices to the Court to show his diligence in responding to court orders and that he had Plaintiffs certify the discovery responses—to which government counsel responded the certification at issue is that of counsel, not his clients. *Id.* at 4–5. Plaintiffs' counsel asked for another 45 days to conduct discovery, which the government opposed. *Id.* at 10. Government counsel also indicated that some of Plaintiffs' responses still indicated "will supplement" in defiance of court orders. *Id.* at 13. The Court ordered Defendants to go forward with the depositions and IMEs as scheduled, *id.* at 14, which took place on June 1 and 2, confirmed by notice filed by Plaintiffs' counsel. *See Notice of Discovery Progress and Related Matters* [docket # 116] at 1.

55. Plaintiffs' counsel then filed multiple motions in rapid succession, including (1) *Plaintiffs' Emergency Motion to Stay Entire Case Pending Resolution of Court of Federal Claims Jurisdictional Issue on Breach of Contract Claim and/or Extend Discovery and Request for Expedited Ruling* [docket # 117] (filed 6/5/2007); (2) *Motion to Reinstate and/or Reconsider Dismissal of Contract and Constitutional Claims against Individual Defendants, or in the Alternative, Leave to File Third Amended Complaint to Include Such Claims and Request for Expedited Ruling* [docket # 118] (filed 6/6/2007); (3) *Motion to Extend Discovery Deadline and Request for Expedited Ruling* [docket # 119] (also filed 6/6/2007); and (4) *Plaintiffs' Amended Motion for Leave to File Witness List and Respectful Request for Expedited Ruling* [docket # 120] (filed 6/7/2007). Judge Kotelly denied the motions to stay the entire case and to reinstate the dismissed contract and constitutional claims on June 7, 2007, because neither motion presented viable legal grounds for the relief requested, nor did Plaintiffs' counsel ever move the court to enter final judgment on the dismissed claims under Rule 54(b), which would have enabled him to seek review. *See* Memorandum Opinion, 6/7/2007 [docket # 122] at 1–2.

56. At the request of Plaintiffs' counsel, a telephone conference was held by this Court on June 11, 2007, to address Plaintiffs' intentions to depose several high-level government officials, including the President of the United States, the Deputy Secretary of the Department of Agriculture, the Chief of Staff of the Department of Agriculture, and the Director of the Office of Civil Rights, and Plaintiffs' request to extend discovery for another four months. *See* Transcript of Telephone Status Conference, 6/11/2007 ("Tr.6/11/2007") at 2–3. Plaintiffs' counsel had previously asked the government to

produce the officials for third-party depositions on their own, stating that "I really do not want to cause further detriment to the Williamses by issuing and paying for subpoenas." *See Defendant's Motion for Protective Order and to Quash the Subpoenas for High–Ranking Government Officials* [docket # 124] ("Pls.Mot.Quash"), Exhibit 2, Email from James Myart to Paul Dean, 6/4/2007. The government refused to produce the high-level officials Plaintiffs' counsel requested. Pls. Mot. Quash, Exhibit 3, Email from Paul Dean to James Myart, 6/4/2007. By the time of the telephone conference on June 11, none of the high-level officials had been properly serviced for deposition as required under federal and local rules. Tr. 6/11/2007 at 7–8. Moreover, Plaintiffs sought the depositions of the named individuals based on meetings with them that took place prior to the 2003 loan application at issue, yet Plaintiffs waited until just days before discovery was scheduled to close to even begin the process of deposing them. *Id.* at 13–15.

The government then filed a motion to quash the subpoenas and issue a protective order for the government officials. *See* Defs. Mot. Quash.

That same day, because Plaintiffs knew of the meetings that led to the desired depositions since the inception of the litigation yet waited until the final week of discovery to begin the process, the Court denied Plaintiffs' request to extend discovery. Memorandum Opinion and Order, 6/11/2007 [docket # 125]; *Williams v. Johanns,* Civ. No. 03–2245, 2007 WL 1723661 at *1 (D.D.C. June 11, 2007).

57. Following the Court's denial of Plaintiffs' first request to extend discovery until October, Plaintiffs' filed a second request to extend discovery on June 13, 2007, due to deficiencies in the government's responses to Plaintiffs' inter-

rogatories, additional depositions to be sought, and the government's refusal to produce the previously named officials for depositions. *See Plaintiffs' Second Motion to Extend Discovery Deadline and Request for Expedited Ruling* [docket # 130] at 1–2. A second telephone conference was held at Plaintiffs' request that same day. *See* Transcript of Telephone Status Conference, 6/13/2007 ("Tr.6/13/2007"). Despite non-compliance with federal and local rules regarding the subpoenas, Plaintiffs' counsel, without providing any legal basis for the claim, asserted that the Court had "unfettered authority and discretion to order all of these depositions, notwithstanding subpoenas." *Id.* at 5. To further support his request for an extension of discovery, Plaintiffs' counsel again erroneously cited Dr. Clayton's finding of "the absolute inability of Ms. Williams to participate and help counsel in discovery." *Id.* at 16. He further argued that Mr. Williams could not assist him as a "functional illiterate who cannot read or write, and who I attempted very, very vigorously to help me, and I could not understand even his responses, he could not even understand the simples of questions that I attempted to ask." *Id.* The government argued again that the situation was "one entirely of the Plaintiffs' making" for failing to propound discovery or move for depositions based on their own information and alleged evidence prior to the discovery deadline. *Id.* at 15. The Court denied Plaintiffs' requests for more time to conduct discovery and for an order that the government produce third-party witnesses for deposition without proper subpoenas in writing the following day. Memorandum Opinion and Order, 6/14/2007 [docket # 133]; *Williams v. Johanns,* Civ. No.

03–2245, 2007 WL 1723662 at *1 (D.D.C. June 14, 2007).